## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

MYRA COWAN,

     Plaintiff,                 :       Case No. 2:19-cv-1225

     -vs-                            Judge Sarah D. Morrison
                                    Magistrate Judge Chelsey M. Vascura

NATIONWIDE MUTUAL INSURANCE
CO.,
                                :

     Defendant.

## OPINION AND ORDER

This matter is before the Court upon Defendant Nationwide Mutual Insurance

Company's Motion to Strike (ECF No. 10) and Plaintiff Myra Cowan's Motion for Conditional

Class Certification and Court-Supervised Notice to Putative Class Members (ECF No. 25). For

the reasons that follow, the Court **DENIES** Defendant's Motion and **GRANTS, IN PART,** and

**DENIES, IN PART,** Plaintiff's Motion.

## I.     BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint and the Declarations

filed in connection with the Motion for Conditional Class Certification.

Plaintiff Myra Cowan ("Plaintiff) is a former hourly non-exempt call center employee of

Defendant Nationwide Mutual Insurance Company ("Defendant" or "Nationwide") who alleges

that she was not paid for pre-shift and lunch break work activities in violation of the Fair Labor

Standards Act ("FLSA") and Florida common law. (Amend Compl., ¶¶ 11, 26, 32, ECF No. 13;

Cowan Decl., ECF No. 25-3). Nationwide is an Ohio corporation that operates "one of the

largest insurance and financial services companies in the world[,]" and is comprised of customer

1

service call centers throughout the United States. (Amend. Compl., ¶¶ 14, 21). Plaintiff attached her consent to join the case to the Original Complaint (ECF No. 1-3) and 18 others followed. (ECF Nos. 3, 4, 6, 19, 24, 30).

In support of her Motion, Plaintiff submitted nine Declarations (including her own) of the consent filers. (ECF Nos. 25-1–25-9). Plaintiff was employed by Defendant in its customer service call center in Gainesville, Florida from February 2017 until November 2018. (Cowan Decl., ¶ 2, ECF No. 25-3). Of the eight other Declarants, four Declarants also worked in Defendant's Gainesville, Florida call center, one worked in Defendant's Canton, Ohio call center, three worked in Defendant's San Antonio, Texas call center, two worked in Defendant's Lynchburg, Virginia call center, and three work/worked from home. (Decls., ECF Nos. 25-1–25-9). These nine Declarations similarly aver the following.

Regardless of their titles or locations (including work-at-home employees), Declarants' duties included receiving inbound customer calls, answering general customer inquiries, looking up claims, and troubleshooting customer problems. (*Id.* ¶ 5). Declarants were paid an hourly rate for 38.75 hours worked each week. (*Id.* ¶¶ 11, 15).

Declarants performed the same off-the-clock work for the same reasons. Defendant's policy, as communicated through management, required that all Declarants arrive early so that they could log into their computer systems and be in available mode by shift start. (*Id.* ¶ 7). If Declarants were not in available mode at shift start, managers could give them an "occurrence" or a "point," which cumulatively could lead to the employee being fired. (*Id.*). Logging onto the computer and loading the required programs before shift start could take up to one hour. (*Id.* ¶ 8). Declarants also had to be in available mode as soon as their lunch break ended. (*Id.* ¶ 10). This necessitated logging back into Nationwide's computer programs and required anywhere from

2

two to 20 minutes of work. (*Id.*). Declarants were not permitted to do any pre-shift work while on the clock. (*Id.* ¶ 7). Based on Declarants' personal observations and conversations with their call center coworkers, all putative class members were subject to the same policies and practices of Defendant. (*Id.* ¶¶ 4, 6, 18).

Taking into account Declarants' pre-shift and lunch work, they performed anywhere from two to ten hours of unpaid work per week. (*Id.* ¶ 14). Although Defendant had a system for making time alteration requests if Declarants worked outside their weekly shift schedule of 38.75 hours, time alteration requests for pre-shift work were never granted. (*Id.* ¶ 11). According to Declarants, management consistently denied time alteration requests for pre-shift and lunch work because they viewed the time as non-compensable. (*Id.* ¶¶ 9, 11). Declarants believe that others would be interested in joining this action. (*Id.* ¶ 19).

According to Declarant Katie Lowery, sometime between March 15, 2019 and June 2019, Nationwide changed their policy for call center employees. (Lowery Decl., ¶ 20, ECF No. 25-2). The new policy required call center employees to wait until their shift start to log onto their computers. (*Id.* ¶ 21). Employees were also to inform their managers regarding how long the start-up took in the morning and after lunch in order for managers to adjust the employee's pay. (*Id.*).

On May 21, 2019, Defendant moved to strike and dismiss all "Consent to Join Wage Claim" forms without prejudice, and requested an order requiring Plaintiff's counsel to issue a curative notice, remove an improper notice from its website, and for sanctions. (ECF No. 10). Plaintiff filed her Response in Opposition on June 11 (ECF No. 14), and Defendant replied on June 24 (ECF No. 21).

Plaintiff's Motion for Conditional Certification and Court-Authorized Notice followed. (ECF No. 25). While Plaintiff's Amended Complaint presents a hybrid collective and class action, she presently moves only for collective FLSA certification. She seeks collective action status pursuant to 29 U.S.C. § 216(b), and has defined the FLSA collective class she wants to represent as:

> All hourly call-center employees who have been employed by Nationwide Mutual Insurance Company, anywhere in the United States, at any time from April 1, 2016 through the final disposition of this matter.[1]

(Mot. Certify, 2, ECF No. 25). Defendant opposes (ECF No. 35), and Plaintiff's Reply is lodged (ECF No. 36). The Court now turns to an examination of the issues these filings present.

## II.     PRE-CERTIFICATION COMMUNICATIONS

In its Motion Strike, Defendant contends that Plaintiff's counsel misled putative class members and circumvented the court-sanctioned notice process when Plaintiff's counsel provided information about the lawsuit as well as opt-in consent forms on its website (ECF No. 10-1), prior to the Court's decision on conditional certification. Further, a Nationwide employee then posted the information on their personal Facebook page. Specifically, Defendant complains that the communication

> says nothing of Nationwide's position categorically denying the claims or the fact that the Court has not addressed the merits of Plaintiff's claims. It further fails to alert individuals that, as opt-in plaintiffs, they may have to appear for deposition or trial, or respond to discovery requests. It additionally gives no indication that individuals have the right to their own representation apart and separate from that of Plaintiff's counsel. Finally, it broadly targets "*[a]nyone who worked in a Nationwide call center as an hourly employee within the past three years*" (emphasis added) when there has been no decision as to whether and to whom the notice would be appropriate.

---

[1] The Court will address the proposed modification raised in Plaintiff's Reply *infra*.

(Mot. Strike, 2, ECF No. 10). As a result, Defendant requests that the Court strike and dismiss without prejudice all filed "Consent to Join Wage Claim" forms, require plaintiff to issue a curative notice and remove the improper notice from its website, and impose sanctions. Plaintiff, on the other hand, maintains that there is nothing improper with this type of pre-certification communication with potential class members and that the issue is, in part, moot because Plaintiff removed the notice from its website shortly after the Motion *sub judice* was filed.

As this Court explained in *Heibel v. U.S. Bank Nat'l Ass'n*, "'pre-certification communication with putative members of a collective action should be allowed unless the communication contradicts a court notice, is misleading, or improper.'" No. 2:11-CV-593, 2012 WL 4463771, at *6 (S.D. Ohio Sept. 27, 2012) (quoting *Goody v. Jefferson Cnty.*, No. CV09437, 2010 WL 3834025, at *2 (D. Idaho Sept. 23, 2010) (collecting cases)). In fact, "29 U.S.C. § 216(b) appears to encourage early communication with potential class members because the commencement of a collective action under § 216(b) does not toll the statute of limitations period for plaintiffs who have failed to opt in . . . .'" *Id.* at *7 (internal quotations omitted). Importantly,

> [t]his Court must give more deference to the communications between Plaintiffs' counsel and potential plaintiffs since Plaintiffs are asserting a FLSA collective action. In order for Plaintiffs to assert a collective action, Plaintiffs must gain consent of other similarly situated persons. A total ban on communications to potential plaintiffs would harm potential plaintiffs who may never be informed of the existence of the litigation. Likewise, without communication potential plaintiffs would not be provided with adequate information to allow them to decide whether to consent to joining the action.

*Laichev v. JBM, Inc.*, No. 1:07CV802, 2008 WL 11452416, at *4 (S.D. Ohio Apr. 11, 2008). Given the inherent time sensitivity of collective action cases, "[c]ourts tend only to restrict communications in collective actions where the facts of actual or potential abuses are egregious in nature[.]" *Id*; *see also Zwerin v. 533 Short North, LLC*, No.

5

2:10-CV-488, 2011 WL 2446622, at *2 (S.D. Ohio June 15, 2011) (explaining that an order restricting communications between counsel and potential class members should only be issued when "'the restraint is justified by a likelihood of serious abuses.'") (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 104 (1981)).

Defendant relies in large part on the Eastern District of Missouri's recent decision in *Sandoval v. Servco, Inc*., No. 4:18-CV-1562, 2019 WL 2075910 (E.D. Mo. May 10, 2019) to support its position. In that case, a lawyer with Plaintiff's counsel's firm emailed an unknown number of potential class members the following:

> We have added an update to our case against Serco. You can find the update here, https://a2xlaw.com/active-cases/serco/
>
> ***Please share this website with anyone you know who worked for Serco so they can complete the consent form linked at the bottom to join the case. Every person who joins makes the case stronger and pushes Serco to settle more quickly before more people join.*** Additionally, please take a moment to look at our other active cases. Oftentimes, wage violations like the one in this case are shared across the industry and you may find that you are eligible for another case we have against another employer you worked for.
>
> If you have already signed a consent form to join this case you **do not** need to complete another one. If your address, phone number, or other contact details have changed please email those changes to Team@a2xlaw.com with the subject line CHANGE OF CONTACT INFORMATION.

*Id.* at *2. The link in the e-mail directed a potential class member to the firm's website, which contained information about the collective action, similar to that at issue before this Court. *Id.* at *2 n.2. One of the recipients of the e-mail then posted it to her personal Facebook page. *Id.* at *2. The *Sandoval* court largely took issue with the e-mail communication stating:

> Although communicating with putative class members is not an ethical violation per se, here, Plaintiff's counsel prematurely and unilaterally distributed notice to current and former Serco employees about this lawsuit and their opportunity to join through targeted ads on Facebook and on their website. A subsequent email by Plaintiff's counsel to an unknown number of individuals provided a link to counsel's website and asked putative class members to "share this website

> with anyone you know who worked for Serco so they can complete the consent form linked at the bottom to join the case." The email was then posted on a public Facebook page. The actions of Plaintiff's counsel in distributing notice of this action to potential plaintiffs in this manner are clearly a concerted effort to circumvent the established notification procedure for opt-in collective actions.
>
> Moreover, the communications from Plaintiff's counsel are inaccurate and misleading in that they suggest that *any* Serco employee may participate in the lawsuit, regardless of the position they held or time period in which they worked for Serco. Counsel's statement that "[e]very person who joins the case stronger and pushes Serco to settle more quickly before more people join in," implies that putative class members need only sign the consent form and join the case in order to receive compensation from a forthcoming settlement. These statements are clearly at odds with the purpose of the notification process, i.e., to provide fair information approved by the Court from which potential class members can determine whether to opt-in.

*Id.* at \*6–7. The court then proceeded to grant the defendant's motion to strike all consent to join forms filed and dismissed those opt-in plaintiffs without prejudice, ordered the plaintiff to issue a curative notice, and reserved ruling on whether to impose monetary sanctions. *Id.* at \*7.

The facts of this case are distinguishable from *Sandoval*. Here, the only pre-certification communication before the Court is Plaintiff's counsel's website providing information about the collective action and the associated opt-in forms. Federal courts, including the Southern District of Ohio, have routinely allowed plaintiffs' counsel to maintain websites discussing potential class actions, as long as the information is "balanced, accurate, and factual." *Laichev*, 2008 WL 11452416, at \*4; *cf. Crosby v. Stage Stores, Inc*., 377 F. Supp. 3d 882, 889 (M.D. Tenn. 2019) (explaining that unilateral communication schemes heighten the potential for coercion when potential class members are contacted directly). Faced with nearly identical collective action information listed on plaintiff's counsel's firm website in *Heibel,* this Court determined there was nothing apparently misleading about the pre-certification communications. 2012 WL 4463771, at \*6 (citing ECF No. 45-5). The Court comes to the same conclusion here. Nothing on Plaintiff's counsel's website presented "misrepresentations" or "discourage[d] persons from

7

opting into the class." *Zwerin*, 2011 WL 2446622, at *2. Further, the Court finds the information presented was "balanced, accurate, and factual." *See Laichev*, 2008 WL 11452416, at *5 ("[N]ot all material posted on websites concerning collective . . . actions is considered to be inaccurate, misleading, or unbalanced even where the materials are predominantly available to solicit and inform potential plaintiffs of only the plaintiffs' allegations.").

As Plaintiff's counsel removed the information from the firm's website on May 22, 2019—just 40 days after its posting—any minor concerns the Court has with the content of the communication have been remedied. However, in future cases, Plaintiff should better clarify that the potential plaintiffs have alternative legal options available besides opting-in to the collective action. *See id.* at *5. Finding the pre-certification communication otherwise appropriate, the Court declines to interfere with the rights of the opt-in plaintiffs or to order sanctions. Accordingly, Defendant's Motion to Strike is **DENIED**.

## III.    CONDITIONAL CERTIFICATION

### A. LEGAL STANDARD

Pertinently, in her Amended Complaint, Plaintiff alleges Defendant's failure to pay hourly non-exempt call center employees for time spent starting up and logging into their computer systems before their scheduled shift start time and during their lunch break, resulting in unpaid hours worked, including overtime wages, in violation of the FLSA.[2] The FLSA requires employers to pay their employees "a wage consistent with the minimum wage . . . and instructs employers to pay employees overtime compensation, which must be no less than one-and-one-half times the regular rate of pay, if the employee works more than forty hours in a week." *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015) (internal citations and quotations

---

[2] The Court addresses the gap time allegation *infra*.

omitted). "'Congress passed the FLSA with broad remedial intent' to address 'unfair method[s] of competition in commerce' that cause 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" *Monroe v. FTS USA, LLC*, 860 F.3d 389, 396 (6th Cir. 2017) (quoting *Keller,* 781 F.3d at 806 and 29 U.S.C. § 202(a)). To further that goal, § 216(b) provides:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

"The lead plaintiff bears the burden of showing that the proposed class members are similarly situated to the lead plaintiff." *Casarez v. Producers Serv. Corp.*, No. 2:17-CV-1086, 2018 WL 2389721, at *2 (S.D. Ohio May 25, 2018). The Court determines whether Plaintiff sustains her burden to establish that she is similarly situated to the putative collective action members by utilizing a two-phase analysis. *Id.*

The first phase, the conditional-certification phase, is conducted at the beginning of the discovery process. At that point, "the plaintiffs need only make a modest factual showing that they are similarly situated to proposed class members." *Myers v. Marietta Memorial Hosp.*, 201 F. Supp. 3d 884, 890 (S.D. Ohio 2016) (internal quotations omitted). In keeping with the FLSA's remedial purpose, "the standard at the first step is 'fairly lenient . . . and typically results in conditional certification of a representative class.'" *Myers,* 201 F. Supp. 3d at 890 (quoting *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006)).

Interestingly, neither the FLSA nor the Sixth Circuit define "similarly situated." *O'Brien v. Ed Donnelly Enters., Inc*., 575 F.3d 567, 584 (6th Cir. 2009), abrogated on other grounds by

*Plaintiff-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016). But case law directs that plaintiffs are similarly situated "when they suffer from a single, FLSA—violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien*, 575 F.3d at 585. Showing a "unified policy" of violations is not required. *Id.* at 584. At this initial stage, the Court "does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility." *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 765 (N.D. Ohio 2015) (citing *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (S.D. Ohio 2011)). Instead, the Court ponders "whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a widespread . . . plan was submitted, and whether as a matter of sound class management, a manageable class exists." *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 868 (S.D. Ohio 2011) (internal quotations omitted).

The final certification stage is the second phase. It is conducted after discovery concludes. When addressing this portion of the analysis, the Court "examine[s] more closely the question of whether particular members of the class are, in fact, similarly situated." *Comer*, 454 F.3d at 547. This is so because the Court has much more information at this point upon which to base its decision of whether the proposed plaintiffs are similarly situated. *Id.* Consequently, a much "stricter standard" is employed during the final certification stage. *Id.*

### B. ANALYSIS

Defendant offers three main arguments as to why the collective class action should not be conditionally certified: (1) Plaintiff cannot identify a common unlawful policy; (2) the varying employment settings of Plaintiff and the putative class preclude conditional certification; and (3) the proposed class is fatally flawed and not manageable. The Court will take each one in turn.

First, Defendant argues that Plaintiff fails to identify "an *actual* policy or plan that *violates the law*[.]" (Response, 11, ECF No. 35). Defendant argues that Nationwide's written policies expressly prohibit off-the-clock work, and in fact, mandate employees to report pre-shift work so they can be paid for additional time worked. (*Id*.). Defendant also argues that there is no evidence that any Declarants requested and were denied pay for their pre-shift work but actually "have recorded additional time worked and received pay for that time." (*Id.* at 15, citing Muntean Decl., ¶¶ 12–13, ECF No. 35-1).

Plaintiff has submitted evidence in the form of Declarations of nine opt-in plaintiffs (including herself) which address the individual's job duties, hours worked, and purport to show that each individual was subject to Nationwide's policy that prohibited them from being on the clock during the pre-shift work required to get their computer systems up and running so they could be in available mode by shift start and at the conclusion of their lunch break. (*See generally* ECF Nos. 25-1–25-9). This took up to 80 minutes daily, and often resulted in working in excess of 40 hours for the week. (*Id.* ¶¶ 8, 10, 16). Regardless, they were only paid for 38.75 hours every week. (*Id.* ¶ 11). Further, each Declarant claims they could be penalized if they were not in available mode at shift start and were never granted time alteration requests for pre-shift time worked. (*Id* ¶¶ 7, 11).

Although Defendant submitted its own Declarations (ECF Nos. 35-1–2) to refute Plaintiff's allegations, the Court does not "resolve factual disputes, decide substantive issues on the merits, or make credibility determinations" at this stage of the proceedings. *Fisher v. Michigan Bell Tel. Co*., 665 F. Supp. 2d 819, 826 (E.D. Mich. 2009); *see also Hamm v. Southern Ohio Med. Ctr*., 275 F. Supp. 3d 863, 876 (S.D. Ohio 2017) (explaining that "the Court is not permitted to weigh the parties' competing evidence at this juncture"). Consequently, that

11

Defendant had a formal procedure for obtaining compensation for pre-shift work that Plaintiff could have used or some putative class members allegedly had used, or that Nationwide had a written policy that prohibited off-the-clock work does not preclude conditional certification. *Abner v. Convergys Corp.*, No. 1:18-CV-442, 2019 WL 1573201, at *6 (S.D. Ohio Apr. 11, 2019); *Fisher,* 665 F. Supp. 2d at 827 (collecting cases). Likewise, Plaintiff is not required to show that the offending policy is in writing. *Id.* Here, Plaintiff has presented sufficient evidence to show that Plaintiff and putative class members were subject to a common Nationwide policy or plan that violated the FLSA.

Next, Defendant contends that Plaintiff cannot make the requisite showing that the putative class is similarly situated because there is no evidence to support the conclusion that such purported policy applied to all hourly call center employees in the United States or that all call center employees performed the same duties. (Response, 15–17). According to Defendant, Declarants limited personal knowledge and localized experiences cannot reasonably translate to the experience or knowledge of all call center employees nationwide. (*Id*. at 15). The Court disagrees.

Declarants allege that they were all call center employees whose job duties included receiving inbound customer calls, answering general customer inquiries, looking up claims, and helping customers troubleshoot problems. (Decls., ¶ 5, ECF Nos. 25-1–25-9). Further, accounting for four Nationwide locations and work-at-home, Declarants aver that the same pre-shift work policy applied to all call center employees. To some extent, Plaintiff addressed Defendant's concern in her Reply by narrowing the proposed class definition from "all hourly call-center employees who have been employed by Nationwide" to "non-exempt individuals who worked at one of Nationwide's call centers (or Service Centers) and/or worked from home and

12

provided direct customer support and assistance through phone or e-mail systems." [3] (Mot. Certify, 2; Reply, 5, ECF No. 36). To the extent that she did not address all of Nationwide's objection, "disparate job titles and duties are largely irrelevant at this stage" and will be considered at the second stage of the analysis instead. *Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752, 764 (W.D. Tenn. Jan. 21, 2011); *Fisher*, 665 F. Supp. 2d at 827.

The Court also rejects Defendant's contention that this Court should disregard any portion of Declarants' statements regarding their knowledge of Defendant's policies because they are "boilerplate" language or based on "inadmissible hearsay." (Response, 16). Each Declarant stated that their knowledge regarding Nationwide's policy on pre-shift work came from what was "posted online, taught in orientation, and repeated by managers and executives constantly . . . we all attended the same orientation together and we were all taught the same policies and procedures for logging into the computer, opening our programs, and getting started for the day." (Decls., ¶¶ 4, 6, ECF No. 25-1–9). Additionally, at least one Declarant alleged that he "personally taught the policies and procedures to new employees," including that they had to be logged in and ready at their scheduled start time but could not yet be on the clock. (Smith Decl., ¶¶ 6–8, ECF No. 25-4). Regardless, as the *Fisher* court explained,

> [e]videntiary issues similar to those raised by Defendant here about the admissibility of Plaintiffs' declarations have been repeatedly rejected by district courts in the Sixth Circuit. . . . Because final disposition is not an issue at the conditional certification stage, requiring a plaintiff to present evidence in favor of conditional certification that meets the hearsay standards of the Federal Rules of Evidence fails to take[] into account that the plaintiff has not been afforded an opportunity, through discovery, to test fully the factual basis of his case.

---

[3] In her modification of the proposed class definition, Plaintiff also addresses Defendant's contention regarding the discrepancy between the parties regarding whether Plaintiff and Declarants were hourly or salaried employees by deleting the word "hourly" altogether. (Response, 21; Reply, 5).

665 F. Supp. 2d at 826 (internal quotations and citations omitted). Contrary to Defendant's assertion, "[f]irst-hand observations or conversations with co-workers may be sufficient to support an inference that a plaintiff has actual knowledge of company-wide employment practices." *O'Neal v. Emery Fed. Credit Union*, No. 1:13-CV-22, 2014 WL 842948, at *2 (S.D. Ohio Mar. 4, 2014). Finally, as this Court previously articulated: "while Defendant complains about the 'boilerplate' declarations filed by Plaintiff[], for the Court to delve too deeply into the allegations in those declarations would be to assess Plaintiff['s] credibility—which the Court typically does not undertake at the conditional certification stage." *Conklin v. 1-800 Flowers.com, Inc.*, No. 2:16-CV-674, 2017 WL 3437564, at *4 (S.D. Ohio Aug. 17, 2017).

Lastly, Defendant argues that the sheer size and scope of the putative class renders the class unmanageable and unsuitable for collective action. (Response, 21). According to Defendant, "detailed inquiries would be required to determine who in the proposed class could even state a claim under the FLSA[.]" (*Id.* at 21–22). Since Plaintiff and other Declarants were scheduled and paid for a 38.75-hour workweek, not a 40-hour workweek, Defendant argues "there is no way of knowing whether the proposed class is similarly situated . . . without making an upfront individualized inquiry as to whether the particular associate worked *any* overtime." (*Id.* at 22).

"At the conditional certification stage, a plaintiff is only required to show that claims of the proposed class are unified by common theories of a defendant's FLSA violations, even if proofs of the theories are inevitably individualized and distinct." *Abner*, 2019 WL 1573201, at *6. Here, the claims of Plaintiff and the putative class are unified by a common theory that Nationwide violated the FLSA by requiring employees to perform pre-shift work off the clock. "If discovery later shows the claims in this case to be so individualized as to render a collective

action unmanageable, the defendant may move to decertify the collective action at the second stage of the certification proceedings." *Hamm*, 275 F. Supp. 3d at 877.

Furthermore, the Court believes Plaintiff's modification of the proposed class definition adequately addresses Defendant's concern that the class be limited to those positions "responsible for handling inbound customer service phone calls." (Response, 19 n.15). The Court declines to narrow the class definition any further based on job title or business unit at this stage in order to prevent erroneously omitting potential opt-in plaintiffs who may be eligible for the action. Defendant's challenge regarding the putative collective action members is more appropriate at the second stage of class certification after discovery is complete. *Lindberg*, 761 F. Supp. 2d at 765. That said, the Court will limit the proposed class definition to those individuals who would not be time-barred from opting into the litigation, i.e. three years from the date of this Order. (Response, 19 n.15, Reply, 5 n.5).

With regards to the size of the putative class, the Court recognizes that Plaintiff's proposed class may include "hundreds, if not thousands" of Nationwide employees across the country. (Mot. Certify, 2; Response, 23). However, prior to discovery, the Court has no way to determine whether that number is closer to one hundred or one thousand. As such, Defendant's argument that the collective opt-in group is unmanageable is premature and more "properly addressed under the more stringent stage-two analysis . . . after all the opt-in plaintiffs have been identified." *Creely v. HCR Manorcare, Inc.*, 789 F. Supp. 2d 819, 828 (N.D. Ohio 2011).

Similarly, the Court also declines to limit the class to any specific locations at this stage. Plaintiff's submission of Declarations from nine current and former employees from four

different locations in four different states[4] and work-at-home, is sufficient to show that all putative class members were subject to the same company-wide policy and practice as Plaintiff regardless of their location. *Compare Heibel*, 2012 WL 4463771, at *5 (holding that plaintiffs' declarations involving similar pay and duties in five states was sufficient to support nationwide certification); *with Conklin,* 2017 WL 3437564 at *5 (denying nationwide conditional certification where the three declarations only supported information about employees at one call center location). "[I]f Plaintiffs provide sufficient evidence of a company-wide practice through declarations of present and former employees at other locations, then the court is justified in sending notice to similarly situated employees at all locations in issue in the litigation." *Fisher*, 665 F. Supp. 2d at 828 (internal quotations omitted). Moreover, when appropriate, conditional certification of a nationwide class promotes judicial efficiency, avoiding duplicative actions challenging the same policy. *Brasfield v. Source Broadband Services*, LLC, 257 F.R.D. 641, 644 (W.D. Tenn. 2009).

At this initial stage, Plaintiff has established that she is similarly situated enough to the putative class members to proceed collectively through discovery. As the District Court for the Eastern District of Michigan noted, "the vast majority of United States District Courts have routinely granted conditional certification to call center employees alleging similar 'off-the-clock' FLSA violations." *Fisher*, 665 F. Supp. 2d at 826 (collecting cases). Accordingly, Plaintiff's Motion for Conditional Class Certification of the collective action is **GRANTED.** Specifically, the Court conditionally certifies the following class:

> All non-exempt employees who worked at one of Nationwide's call centers or service centers anywhere in the United States and/or worked from home and provided direct

---

[4] Whether every Declarant ultimately falls within the time period that is encompassed by the class definition ordered by the Court does not negate the evidence presented as to the widespread nature of Defendant's offending policy. (Response, 7–8).

customer support and assistance through phone or e-mail systems, at any time three years prior to the date of this Court's Order through the final disposition of this matter.

**C. NOTICE**

Having determined that conditional certification is warranted, the Court now turns to the form and manner of Plaintiff's proposed Notice. Plaintiff requests that the Court: (1) approve the Notice and Consent form; (2) allow Plaintiff to disseminate the Notice and Consent form via U.S. mail, e-mail, and text; (3) allow the Notice and Consent form to be posted in plain view at each of Nationwide's call centers, nationwide; (4) approve a reminder e-mail to be sent to the putative class halfway through a 60-day notice period; and (5) order Defendant to produce an electronic and importable roster of putative class members that worked for Nationwide during the relevant time period, which includes their full names, dates of employment, positions of employment, locations of employment, last known mailing addresses, last known telephone numbers, e-mail addresses, and last four digits of their social security numbers, within fourteen days of this Order. (Mot. Certify, 14–17). Defendant objects to Plaintiff's proposed Notice on several grounds. The Court will address each objection in turn.

At the outset, the Court notes that conditional certification under the FLSA "does not produce a class with an independent legal status, or join additional parties to the action." *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013). Rather, it "simply allows the sending of court-approved written notice to employees who must then affirmatively opt in to the litigation." *Taylor v. Pilot Corp*., 697 Fed. Appx. 854, 860 (6th Cir. 2017). As such, "[o]nce a court determines that plaintiffs have met their burden for initial class certification, the court may grant court-authorized notice informing potential plaintiffs of their opportunity to opt into the lawsuit." *Kucker v. Petco Animal Supplies Stores, Inc*., No. 14CV983, 2016 WL 237425, at *26–27 (S.D.N.Y. Jan. 19, 2016) "[C]ourt-supervised notice is the preferred method for managing the

17

notification process for several reasons: it avoids 'multiplicity of duplicative suits;' it allows the court to set deadlines to advance the disposition of an action; it furthers the 'wisdom and necessity for early judicial intervention' in multi-party actions; and it protects plaintiffs' claims from expiring under the statute of limitations." *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007) (quoting *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 171–72 (1989)).

### 1. Content

The Court has broad discretion over the notice's content with some requirements. *Hoffman-La Roche*, 493 U.S. at 169–70. Court-authorized notice of a collective action should be "timely, accurate, and informative." *Id.* at 172. This allows the notice's readers to "make informed decisions about whether to participate." *Id.* at 170. However, the notice must not communicate "any encouragement to join the suit or any approval of the suit on its merits." *Id.* at 169.

Plaintiff's Notice provides the case caption while informing the reader in a plain manner of the case's synopsis. (ECF No. 25-11). The Notice details why it is being sent, and that the Court makes no judgment on the propriety of Plaintiff's claims or Nationwide's defenses or on the propriety of joining the suit. (*Id.*). The Notice describes the effect of joining and not joining the case on potential collective members' claims. (*Id.*). It further instructs that completing and timely returning the Consent form means that the class member will be represented by the law firms of Anderson Alexander, PLLC, and Barkan Meizlish Handelman Goodin DeRose Wentz, LLP. (*Id.*). The Notice directs questions to the same and provides the firms' contact information. (*Id.*). The Notice defines timely as within the opt-in period discussed below. (*Id.*).

That said, there are also several issues with the content of the Notice.

18

Pursuant to Plaintiff's modified class definition (Reply, 5), any reference to "hourly" employee in the Notice shall be removed. Similarly, under Section 1, "Why Are You Getting This Notice?" and Section 3, "Are You Eligible to Join This Lawsuit?" the eligible employees shall be appropriately modified to reflect the class conditionally certified above and tied to the date of conditional certification. This same change shall be made in addressing who the notice is "TO:" under the caption.

As Defendant notes, the FLSA does not operate to cover "gap time" or "straight time" claims that would arise from the unpaid time between Declarants' scheduled 38.75 hours and 40 hours per week. *See Flexter v. Action Temporary Services, Inc.*, No. 2:15-CV-754, 2016 WL 7852351, at *4 (S.D. Ohio Mar. 25, 2016) (holding that recovery of gap time is not conferred by the FLSA); *Athan v. United States Steel*, 364 F. Supp. 3d 748, 755 (E.D. Mich. 2019) (holding that the FLSA does not provide a remedy for unpaid straight time hours and makes no distinction between pure gap time and overtime gap time).[5] Based on the Declarations submitted, the opt-in plaintiffs were all making well over the hourly federal minimum wage, such that their average wages never fell below $7.25 per hour.[6] *Flexter*, 2016 WL 7852351, at *3 ("The obvious exception to [barring recovery for gap time under the FLSA] . . . is where unpaid straight time would drop an employee's wages below the minimum wage threshold."). Therefore, to the extent it is being sought, the Court rejects Plaintiff's claims for unpaid gap time or straight time under the FLSA. Consequently, Plaintiff shall modify the Notice to make it clear that the lawsuit

---

[5] Plaintiff still may have remedies for recovery for gap time claims based on state statutes or general contract principles, as alleged in the Amended Complaint.

[6] No Declarant reported making less than $17.00/hour. (Decls., ¶ 15, ECF Nos. 25-1–25-9).

alleges that Nationwide failed to pay overtime wages as required by the FLSA and that Plaintiff seeks to recover unpaid overtime wages only**.**

Moving onto the Consent form, the Court finds it is straightforward and easy to complete. It states the signatory has read and understands the Notice and agrees to opt in to the collective action. (ECF No. 25-11). The Consent form indicates the signatory agrees to be represented by the law firms of Anderson Alexander, PLLC, and Barkan Meizlish Handelman Goodin DeRose Wentz, LLP, and also specifies that the signatory understands that they will be bound by any settlement reached or judgment entered in the matter. (*Id.*).

In sum, with the above-noted revisions made, the Court anticipates approving the content of Plaintiff's Notice and Consent form.

### 2. Method of Distribution

Plaintiff seeks distribution of the Notice and Consent form via U.S. mail, e-mail, and text message. While Nationwide does not object to distribution through U.S. mail for current employees and U.S. mail and e-mail for former employees, it does object to distributing the Notice via text message.

In *Abner v. Congergys Corp.,* this Court recognized that there is a "growing trend to allow postal mail and e-mail service upon [all] putative class members as it increases the likelihood that putative class members receive notice and may obviate the need to resend the notice if a putative class member's address is inaccurate." 2019 WL 1573201, at *6; *see also Hall v. U.S. Cargo and Courier Service*, LLC, 299 F. Supp. 3d 888, 898 (S.D. Ohio 2018) (collecting cases). However, where defendants have objected to the use of text messages, the majority of courts in this district have declined to allow plaintiffs to notify putative class members via text message unless notice through other methods is ineffective. *Nazih v. Café*

*Instanbul of Columbus, LLC*, No. 2:17-CV-947, 2018 WL 4334613, at * 6 (S.D. Ohio Sept. 11, 2018); *Brittmon v. Upreach, LLC,* 285 F. Supp. 3d 1033, 1044–45 (S.D. Ohio 2018); *Casarez,* 2018 WL 2389721, at *8.

The Court is mindful of the need to balance affording putative class members the opportunity to participate in the collective action while not badgering them to do so. Accordingly, the Court permits the Notice and Consent form to be sent via U.S. mail and e-mail to all putative class members. However, Plaintiff may not notify any potential opt-in plaintiff of the lawsuit by text message unless Plaintiff can show that notice by postal and electronic mail is insufficient—or in other words, such notice by both methods has been returned as undeliverable for a particular individual. *See Casarez,* 2018 WL 2389721, at *8 (finding that it was an "appropriate compromise" to allow the plaintiff to send a text message upon the showing that notice by U.S. mail and e-mail was insufficient as to any given potential opt-in plaintiff). Plaintiff may not send notice to any potential class member by text message absent further permission from the Court.

### 3. Posting

Plaintiff also requests that the Court allow the Notice and Consent form to be posted in plain view at each of Nationwide's call centers, nationwide. Nationwide argues that posting the Notice in its service centers "would inappropriately suggest that Nationwide supports the action." (Response, 26).

As previously discussed, Plaintiff has offered no evidence to suggest that U.S. mail and e-mail notice will be insufficient to notify putative class members of their right to opt in to the instant litigation. *Fenley v. Wood Grp. Mustang, Inc*., 170 F. Supp. 3d 1063, 1074–75 (S.D Ohio 2016); *see also Lutz v. Huntington Bank*, No. 2:12-CV-1091, 2013 WL 1703361, at *7 (S.D.

21

Ohio Apr. 19, 2013) (denying the plaintiffs' request to post notice when the plaintiffs had not demonstrated why it was necessary for the notices to be posted in the workplace); *Linberg v. UHS of Lakeside*, 761 F. Supp. 2d 752, 765 (W.D. Tenn. 2011) (finding the plaintiffs' request to post notice at each workplace premature where first-class mail was authorized); *cf. Thompson v. Peak Energy Servs. USA, Inc.*, No. 13-0266, 2013 WL 5511319, at *3 (W.D. Pa. Oct. 4, 2013) (accepting the plaintiff's argument that any "workplace disturbance" is justified given "the nature of the jobs that the potential Opt-In Plaintiff typically work [which] requires them to be away from their homes for months on end" (internal quotations omitted)). As such, the Court finds that three forms of notice is redundant and unnecessary. *Fenley*, 170 F. Supp. 3d at 1075. Plaintiff shall not post copies of the Notice or Consent form in any of Nationwide's call centers.

### 4. Roster

As noted above, Plaintiff requests an order requiring Defendant to produce an electronic and importable roster of current and former employees fitting the proposed class definition within fourteen days of this Order to include full names, dates of employment, positions of employment, locations of employment, last known mailing addresses, last known telephone numbers, e-mail addresses, and last four digits of their social security numbers. Defendant objects to providing phone numbers and the last four digits of the requisite employees' social security numbers as overbroad without sufficient support for the request. Plaintiff clarifies in her Reply that she only seeks the putative class members' social security numbers "for the purpose of locating individuals whose mail is returned as undeliverable." (Reply, 11 n.11).

As stated above, absent a showing that the last known physical and e-mail address of a potential class member is insufficient to provide reasonable notice to that individual, Plaintiff is not permitted to distribute notice by text message. As a result, the request for telephone numbers

and social security numbers is duplicative and unnecessarily intrusive to the privacy rights of Defendant's employees at this juncture. *See Abner*, 2019 WL 1573201, at *6; *O'Neal*, 2014 WL 842948, at *7; *Wolfram v. PHH Corp.*, No. 1:12-CV-599, 2012 WL 6676778, at *4 (S.D. Ohio Dec. 21, 2012). Plaintiff's request as to that data is denied.

Citing the potential size of the putative class, Defendant also posits that it will need more than 14 days to compile the requested data. In light of the potentially large number of putative class members across the country, the Court finds Defendant's request reasonable. *Abner*, 2019 WL 1573201, at * 8 (citing *LaFleur v. Dollar Tree Stores, Inc*., No. 12-CV-363, 2012 WL 4739534, at *12 (E.D. Va. Oct. 2, 2012)). As such, Defendant shall have 30 days to provide the information to Plaintiff.

Accordingly, the Court orders Defendant to produce the full names, dates of employment, positions of employment, locations of employment, last known mailing addresses, and e-mail addresses of putative class members to Plaintiff's counsel in an electronic and importable format within 30 days of this Order.

### 5. Opt-in Period

The Notice calls for a 60-day opt-in period. (ECF No. 25-11.) Defendant objects and argues that a 45-day opt-in period is more appropriate.

"There is no hard and fast rule controlling the length of FLSA notice periods." *Ganci v. MBF Inspection Servs.*, *Inc*., No. 2:15-CV-2959, 2016 WL 5104891, at *2 (S.D. Ohio Sept. 20, 2016). Courts in this district have frequently found 90-day opt-in periods appropriate. *See Brittmon,* 285 F. Supp. 3d at 1047 (Watson, J.); *Fenley,* 170 F. Supp. 3d at 1075–76 (Smith, J.); *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14–CV–253, 2015 WL 853234, at *5 (S.D. Ohio Feb. 26, 2015) (Rice, J.); *Sisson v. OhioHealth Corp.*, No. 2:13–CV–517, 2013 WL 6049028, at *8

(S.D. Ohio Nov. 14, 2013) (Frost, J.); *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 181 (S.D.

Ohio 2012) ("*Swigart II*") (Black, J.); *Musarra v. Digital Dish, Inc.*, No. C2–05–545, 2008 WL

818692, at \*7 (S.D. Ohio Mar. 24, 2008) (Marbley, J.). On the other hand, this Court has also

opined that a 45-day opt-in period is reasonable. *Hall*, 299 F. Supp. 3d at 900 ("[A] forty-five

day opt-in period will satisfy the need to prevent delay in this litigation while also allowing

potential plaintiffs time to fully consider their options."); *see also Baden-Winterwood v. Life

Time Fitness*, No. 2:06-CV-99, 2006 WL 2225825, at \*3 (S.D. Ohio Aug. 2, 2006) (explaining

that a 45-day opt-in period "satisfies the Court's concern of balancing the need for speedy justice

while at the same time allowing potential plaintiffs time to fully consider their options").

The Court is not particularly persuaded that it should cut Plaintiff's requested opt-in

period short because Plaintiff has located 19 opt-in plaintiffs at this stage in the proceedings. (*See*

Response, 25, "Plaintiff's counsel has already been soliciting associates to join the class for

months[.]"). Moreover, the Court does not find that an additional 15 days will significantly delay

the litigation. *Ganci*, 2016 WL 5104891, at \*2. Accordingly, the opt-in period shall be 60 days.

### 6. Reminder Notice

Finally, Plaintiff requests that the Court approve a reminder e-mail to be sent to the

putative class halfway through the notice period. Defendant objects, arguing that such a reminder

"would only serve to stir up unwarranted litigation." (Response, 25). The Court agrees with

Defendant.

"Many courts have rejected reminder notices, recognizing the narrow line that divides

advising potential opt-in plaintiffs of the existence of the lawsuit and encouraging participation."

*Wolfram,* 2012 WL 6676778, at \*4. As Defendant suggests, this Court has previously explained

that "[c]ourts should be hesitant to authorize duplicative notice because it may unnecessarily 'stir

24

up litigation' or improperly suggest the Court's endorsement of Plaintiff's claims." *Hardesty v. Kroger*, Co., No, 1:16-CV-298, 2016 WL 3906236, at * 2 (S.D. Ohio July 19, 2016) (quoting *Hoffmann-La Roche*, 493 U.S. at 168–69). Accordingly, the Court finds that a reminder e-mail is improper in this instance and denies Plaintiff's request.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's Motion to Strike (ECF No. 10) is **DENIED** and Plaintiffs' Motion for Conditional Class Certification and Court-Supervised Notice to Putative Class Members Pursuant to 29 U.S.C. § 216(b) (ECF No. 25) is **GRANTED IN PART** and **DENIED IN PART**.

The Court **CONDITIONALLY CERTIFIES** the following FLSA class:

All non-exempt employees who worked at one of Nationwide's call centers or service centers anywhere in the United States and/or worked from home and provided direct customer support and assistance through phone or e-mail systems, at any time three years prior to the date of this Court's Order through the final disposition of this matter.

The Court **DENIES** Plaintiff's Motion to the extent it seeks approval of her proposed Notice and Consent form. Within **FOURTEEN (14) DAYS**, counsel shall confer and submit a joint draft of a revised proposed notice to potential plaintiffs about this collective action and a proposed opt-in consent form with the aforementioned modifications to morrison_chambers@ohsd.uscourts.gov. The Court will resolve any new disputes noted in the draft in an order granting final approval of the notice and opt-in consent form.

Within **THIRTY (30) DAYS** of the issuance of this Opinion and Order, Defendant shall identify all putative class members by providing a list in electronic and importable format of the full names, dates of employment, positions of employment, locations of employment, last known mailing addresses, and e-mail addresses of all current and former employees fitting the class description above to Plaintiff's counsel.

After receiving the putative class members' contact information from Defendant and upon final approval of a notice and consent form by the Court, Plaintiff shall send the Notices and Consent forms via U.S. mail and e-mail within **TWENTY-ONE (21) DAYS.** [7] The putative class members shall then have **SIXTY (60) DAYS** from the date that Plaintiff sends the Notices to join this litigation.

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
SARAH D. MORRISON
UNITED STATES DISTRICT JUDGE

---

[7] This time period was suggested by Plaintiff and not addressed by Defendant. (ECF No. 25-12).