# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**MYRA COWAN, Individually and on behalf of all others similarly situated,**

**Plaintiff,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY,**

**Defendant.**

**Case No. 2:19-cv-01225-SDM-CMV**

**Judge: Sarah D. Morrison**

**Magistrate: Chelsey M. Vascura**

## JOINT MOTION FOR SETTLEMENT APPROVAL AND DISMISSAL WITH PREJUDICE

Named Plaintiff Myra Cowan ("Named Plaintiff Cowan") and Defendant Nationwide Mutual Insurance Company ("Defendant" or "Nationwide") file this Joint Motion for Settlement Approval and Dismissal with Prejudice ("Joint Motion") seeking the Court's approval of the Settlement, specifically, the Settlement Agreement, attached hereto as Exhibit A, along with all exhibits thereto: Exhibit A(1) List of Individuals Who Filed Opt-in Consent Forms; Exhibit A(2) Individual Release Agreement for Named Plaintiff Cowan; Exhibit A(3) Proposed Order Approving Settlement and Dismissal with Prejudice; and Exhibit A(4) Notice of Settlement.

The proposed Settlement will resolve bona fide disputes involving off-the-clock work allegations against Nationwide under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219. Named Plaintiff Cowan asserted that Nationwide unlawfully failed to pay its non-exempt service center employees, including Plaintiff, for all hours worked. Specifically, Named Plaintiff Cowan alleged that service center employees were required to perform unpaid work off-the-clock, including logging on and opening computer programs to be "call ready" at the start of their shifts.

The parties respectfully submit that the proposed settlement is fair and reasonable and satisfies the criteria for approval under § 216(b) of the FLSA. The settlement was achieved after the exchange of pertinent polices and data, during arms-length, good faith negotiations among the parties conducted by experienced FLSA counsel. The accompanying memorandum sets forth the grounds supporting this motion.

Respectfully submitted,

/s/ *Clif Alexander*

Clif Alexander (*admitted pro hac vice*)
Austin W. Anderson (*admitted pro hac*)
Lauren E. Braddy (*admitted pro hac vice*)
ANDERSON ALEXANDER, PLLC
819 N. Upper Broadway
Corpus Christi, Texas 78401
Email: clif@a2xlaw.com
austin@a2xlaw.com
lauren@a2xlaw.com

Robert E. DeRose
Jessica R. Doogan
BARKAN MEIZLISH DEROSE
WENTZ MCNERNEY PEIFER, LLP
4200 Regent Street, Suite 210
Columbus, Ohio 43219
Email: bderose@barkanmeizlish.com
jdoogan@barkanmeizlish.com

*Attorneys for Plaintiffs*

/s/ *Tonya B. Braun*

Tonya B. Braun (0075048)
Jones Day
325 John H. McConnell Boulevard, Suite 600
Columbus, Ohio 43215
Phone: (614) 469-3939
Facsimile: (614) 461-4198
tbraun@jonesday.com

<u>**MEMORANDUM IN SUPPORT**</u>

**I.** <u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

**A.** <u>**THE LAWSUIT**</u>

On April 1, 2019, Named Plaintiff Cowan filed the instant lawsuit (the "Lawsuit") as a collective action under 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA"), which also included class action Fed. R. Civ. P. Rule 23 claims under Florida common law pursuant to equitable theories of unjust enrichment and quantum meruit. Dkt. 1. In her Complaint, Named Plaintiff Cowan alleged that she and other allegedly similarly situated employees were required to work off-the-clock without compensation and sought to represent a class of non-exempt service center employees who worked in Nationwide's service centers nationwide. *See id.*

On May 21, 2019, Nationwide filed its Answer denying the material allegations of the Complaint. Dkt. 9.

On May 23, 2019, Nationwide filed a motion for summary judgment as to Named Plaintiff Cowan's FLSA claim. Dkt. 11. Nationwide maintained that, even accepting as true Named Plaintiff Cowan's allegation that she "often worked up to one (1) hour" off-the-clock per week without compensation, her employment records established as a matter of law that she had no claim under the FLSA because her regular work schedule was 38.75 hours per week. *See id.*

On June 11, 2019, Named Plaintiff Cowan filed her Amended Complaint. Dkt. 13. In her Amended Complaint, Named Plaintiff Cowan alleged that rather working up to one hour per week off-the-clock she worked closer to three hours off-the-clock. *See id* at ¶ 26.

On June 24, 2019, Nationwide filed an Answer denying the material allegations of the Amended Complaint. Dkt. 20. Nationwide continues to deny any liability or wrong doing.

On July 10, 2019, Named Plaintiff Cowan filed a Pre-Discovery Motion for Conditional Certification and Court-Supervised Notice To Potential Opt-in Plaintiffs ("Motion for Conditional

Certification"), seeking to certify a nationwide class of hourly call center employees who work or worked in one of Nationwide's service centers during the relevant period. Dkt. 25.

On August 15, 2019, the Court denied Nationwide's Motion for Summary Judgement as moot with leave to refile. Dkt. 34.

On August 28, 2019, Nationwide filed its Opposition to Named Plaintiff Cowan's Motion for Conditional Certification. Dkt. 35.

On September 25, 2019, the Court granted Named Plaintiff Cowan's Motion for Conditional Certification and, pursuant to 29 U.S.C. § 216(b), conditionally certified a class consisting of "All non-exempt employees who worked at one of Nationwide's call centers or service centers anywhere in the United States and/or worked from home and provided direct customer support and assistance through phone or e-mail systems, at any time three years prior to the date of this Court's Order through the final disposition of this matter." Dkt. 37.

On October 10, 2019, Nationwide filed an emergency motion seeking clarification of the Court's September 25, 2019 Order. Dkt. 39. On October 21, 2019, the Court issued an order clarifying the scope of the class. Dkt. 42.

In November 2019, Notice of the Lawsuit was sent via First Class mail to nearly 4,700 potential class members. Over 300 individuals filed consent forms opting into the Lawsuit (the "Opt-in Plaintiffs," and together with Named Plaintiff Cowan, "Plaintiffs").

**B. NEGOTIATION OF THE SETTLEMENT**

On April 30, 2020 the parties agreed to a stay of the Lawsuit in order to pursue settlement discussions. Dkt. 91. Nationwide provided timekeeping policies that specifically required its employees to record all time worked and workweek, payroll, and timekeeping records for Plaintiffs. Based on those payroll records Plaintiffs created a detailed damage model to encompass all of the unpaid wages that Plaintiffs allege were owed. The parties thereafter conferred multiple

times addressing their respective positions regarding the law and facts to determine if a resolution could be reached. Among its defenses, Nationwide maintained that the Plaintiffs' claims had no merit whatsoever; that decertification was inevitable because Plaintiffs could not establish a common unlawful policy requiring Plaintiffs to be "call ready;" and that any damages analysis had to account for the fact that the Plaintiffs were scheduled for a 38.75 hour workweek. At all times Plaintiffs maintained that Nationwide was liable for the unpaid wages addressed in the First Amended Collective/Class Action Complaint. *See* Dkt. 13.

### C. THE SETTLEMENT TERMS

If approved by the Court, the Settlement will cover Named Plaintiff Cowan and the Opt-In Plaintiffs identified in Exhibit A(1) to the Settlement Agreement.

The total gross settlement amount ("Settlement Amount") is One Hundred Twenty-Five Thousand Dollars ($125,000.00), which is inclusive of: (a) all of the individual settlement payments to Plaintiffs; (b) Named Plaintiff Cowan's service award as approved by the Court; (c) Plaintiffs' counsel's attorneys' fees and expenses as approved by the Court; and (d) the fees and costs associated with settlement administration as approved by the Court.

Sixty-five thousand and five hundred dollars ($65,500.00) of the Settlement Amount will be divided into individual settlement payments to the Plaintiffs ("Individual Settlement Payments"). The Individual Settlement Payments will be calculated proportionally based on the number of workweeks each Plaintiff worked during the period of September 26, 2016 to March 8, 2020.[1] Each Plaintiff will receive a minimum of $20.00, regardless of their number of workweeks.

---

[1] The pro rata distribution will be calculated by dividing $65,500.00 (less any sums necessary to ensure that each Plaintiff receives at least $20.00) by the total number of weeks worked for all Plaintiffs to determine a work-week value. The work-week value is then multiplied by the number of weeks worked for each individual plaintiff to calculate their individual damage award.

Two thousand and five hundred dollars ($2,500.00) of the Settlement Amount will be paid to Named Plaintiff Cowan, in addition to her Individual Settlement Payment, for her service as the Named Plaintiff. In addition, fifty thousand ($50,000.00) will be paid to Plaintiffs' Counsel for attorneys' fees and expenses incurred. in the Lawsuit. The attorneys' fees and costs together represent forty percent of the total settlement amount. Finally, seven thousand ($7,000.00) will be set aside for fees and expenses for a claims administrator to administer the settlement.

In exchange for these payments and other consideration provided for in the Settlement Agreement, the Lawsuit will be dismissed with prejudice, Named Plaintiff Cowan will execute the Individual Release Agreement (Exhibit A(2) to the Settlement Agreement), and Plaintiffs will release Defendant (and Releasees (as defined within the Settlement Agreement)) from federal, state, and local wage-and-hour claims, rights, demands, liabilities and causes of action asserted in the Complaint (with its amendments) or those wage-and-hour claims which could have been asserted in the Lawsuit, whether known or unknown, including but not limited to claims for unpaid wages, unpaid overtime compensation, liquidated damages, penalties, interest, attorneys' fees, and expenses pursuant to the FLSA, and any applicable state or local wage statute where Plaintiffs worked for Defendant, including but not limited to the Florida Minimum Wage Act, or common law claims, including but not limited to unjust enrichment or quantum meruit, for the released period, which is defined as the period of April 1, 2016 until the date on which Named Plaintiff Cowan and Plaintiffs' Counsel executed the Settlement Agreement.

## II.     SETTLEMENT APPROVAL IS WARRANTED

The proposed Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. As shown in the attached Declarations of Clif Alexander and Robert DeRose and as explained below, Court approval is warranted. *See* Exhibits B and C, respectfully.

## A. THE COURT SHOULD APPROVE THE FLSA SETTLEMENT

The standard for approval of a FLSA settlement is straightforward: a district court should approve a settlement if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352–54 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945); *see also Landsberg v. Acton Enterprises, Inc.*, No. C2-05-500, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (recognizing that the court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 216(b) "after scrutinizing the settlement for fairness."). "The existence of a *bona fide* dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligation under the FLSA." *Filby v. Windsor Mold USA, Inc.,* No. 3:13-cv-1582, 2015 WL 1119732, at *2 (N.D. Ohio March 11, 2015).

### a. The Proposed Settlement Is the Product of Contested Litigation.

The Settlement is a result of contested litigation, reached in the context of this Lawsuit. The Lawsuit has been pending for over a year, and was resolved only after substantial disputes and briefing (including conditional certification, the merits of Named Plaintiff Cowan's individual claims, and the scope of Opt-In Plaintiff discovery), the production of pertinent policies and relevant data regarding Plaintiffs' workweeks, timekeeping and payroll records, and numerous exchanges regarding the parties' respective positions. In this context, the parties had an opportunity to analyze the law and the facts and assess the strengths and weaknesses of the claims and defenses at issue in this case.

### b. The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties.

The second prong of the Court's settlement approval inquiry focuses on two issues: (1) confirming the existence of a *bona fide* dispute between the parties and (2) reviewing the fairness and reasonableness of the proposed settlement. Both are satisfied here.

### i. A *Bona Fide* Dispute Exits Between the Parties Over Liability.

Named Plaintiff Cowan alleges that she and other similarly-situated non-exempt service center employees were required by Defendant to perform unpaid work off-the-clock to be "call ready" at the start of their shifts including, but not limited to: (a) logging into computers; (b) opening computer programs; (c) signing into computer programs; and (d) ensuring programs are running correctly. Defendant denies that it engaged in any unlawful or improper conduct, including, expressly, all off-the-clock work claims of Plaintiffs, and denies all liability and damages of any kind to anyone regarding Plaintiffs' claims.

The Parties also dispute whether collective treatment of Plaintiffs' FLSA claims is appropriate. Plaintiff filed a Motion for Conditional Certification, which was strongly opposed by Defendant. Defendant continues to deny that the Lawsuit could be litigated on a collective action basis. Absent settlement, Defendant would file a motion for decertification of the conditionally certified class. If the Court granted Defendant's decertification motion, the over 300 Plaintiffs who filed consents to join the Lawsuit would need to file individual lawsuits in order to proceed with their individual claims.

### ii. The Proposed Settlement Is Fair and Reasonable.

"The need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Government*,

2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate the fairness of FLSA settlements, which the *Crawford* court applied:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983)), *quoted in Crawford*, 2008 WL 4724499 at *3; *see also Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *6 (N.D. Ohio Mar. 8, 2010). The proposed Settlement satisfies each factor.

### 1. There is no risk of fraud or collusion.

The instant Settlement was fairly and honestly negotiated. Plaintiffs' counsel and Defendant's counsel each have extensive experience litigating FLSA claims, including claims for unpaid hours worked. *See* Exhibit B, ¶ 3; Exhibit C, ¶¶ 3,9. The Settlement Agreement was achieved only after arms-length and good faith negotiations between the parties, occurring after significant motion practice, the production of workweek, timekeeping, and payroll records for the Plaintiffs, and counsel for the parties vigorously arguing their differing positions. *See* Exhibit B. at ¶ 21; Exhibit C. at ¶ 18.

### 2. The complexity, expense, and likely duration of continued litigation favor approval.

Employment cases in general, and specifically wage-and-hour cases with hundreds of plaintiffs, are expensive and time-consuming. Here, the parties disagree about the merits of Plaintiffs' claims and the viability of Nationwide's various defenses yet recognize that achieving a final result through litigation and potential appeal processes would require substantial additional

9

risk, time and expense. If forced to litigate this case further, the parties will incur substantial expenses and fees in continuing discovery, including taking the deposition of Named Plaintiff Cowan, as well as Rule 30(b) deposition(s) of Defendant, and a significant number of Opt-In Plaintiff and manager depositions. *See* Exhibit B at ¶ 24 ; Exhibit C at ¶ 19. Moreover, the parties would incur substantial fees in further motion practice, including dispositive motions, a decertification motion, and an anticipated Rule 23 Motion for Class Certification. *See* Exhibit B at ¶ 24 ; Exhibit C at ¶ 19. Accordingly, the policy favoring the settlement of wage and hour actions and other complex cases applies with particular force here. *See, e.g., Lewis v. Huntington Nat'l Bank*, No. 2:11-CV-00058, 2013 WL 12231327, at *3 (S.D. Ohio May 30, 2013) (Marbley, J.) (recognizing that, absent settlement, wage and hour plaintiffs "would have had to show, through testimony and documentary evidence, the specific hours, times, and dates worked—a process requiring extensive and expensive additional discovery"); *Cornell v. World Wide Business Servs. Corp.,* 2015 WL 6662919, at *2 (S.D. Ohio Nov. 2, 2015) (decertifying collective because of "disparate factual and employment settings" of the individual opt-in plaintiffs).

In view of the costs, risks, and delay of continued litigation balanced against the benefits of settlement, the Settlement is in the best interests of the Plaintiffs as it provides substantial relief to the Plaintiffs promptly and efficiently, and augments the benefits of that relief through the economies of collective resolution. *See* Exhibit B, ¶¶ 21–22; Exhibit C, ¶ 20.

### 3.     The Parties have engaged in substantial investigation.

The parties have engaged in substantial investigation prior to and during the settlement negotiations, and the issues are well understood by both sides. *See* Exhibit B, ¶¶ 12, 20–22; Exhibit C, ¶ 18. Relevant information was provided to Plaintiffs' counsel, including policies and workweek, timekeeping, and payroll data for the Plaintiffs. *See* Exhibit B, ¶¶ 20–21; Exhibit C, ¶ 18. The legal issues in the case were thoroughly researched, and argued by counsel for the parties,

in conditional certification and early summary judgment briefing. *See* Exhibit B, ¶¶ 13–14; Exhibit C, ¶ 18. All of aspects of the dispute are well-understood by both sides. *See* Exhibit B, ¶ 22; Exhibit C, ¶ 18.

### 4. There is no guarantee of success on the merits.

The parties recognize that the final outcome of the litigation is uncertain and that achieving a final result through the litigation and appeal process would require substantial additional risk. *See* Exhibit B, ¶¶ 22, 24; Exhibit C, ¶ 19. For its part, Nationwide denies that it engaged in any unlawful or improper conduct including, expressly, all off-the-clock work claims of Plaintiffs; denies all liability and damages of any kind to anyone regarding Plaintiffs' claims; and denies that this case could be litigated on a collective action basis. There is no guarantee that the Plaintiffs will prevail on Defendant's anticipated motion to decertify the conditionally certified class or Defendant's anticipated motion(s) for summary judgment. *See* Exhibit B, ¶ 22; Exhibit C, ¶ 19. If the case proceeded to trial, Defendant raises affirmative defenses to Plaintiffs' claims, and the outcome of those defenses at trial is uncertain as well. *See* Exhibit B, ¶ 22, 24; Exhibit C, ¶ 19. Continued litigation would thus present risk for both parties, and could result in appeals. *See* Exhibit B, ¶ 24; Exhibit C, ¶ 19. Counsel and Named Plaintiff Cowan support the settlement and there are no absent members.

The opinions of experienced Counsel of the parties support the Settlement, as does Named Plaintiff Cowan. *See* Exhibit B, ¶ 22; Exhibit C, ¶ 20. Courts should generally "defer to the judgment of experienced counsel who [have] competently evaluated the strength of [their] proofs," *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983), especially when the case has been developed through discovery. *See In re Broadwing, Inc. ERISA Litig.,* 252 F.R.D. 369, 375 (S.D. Ohio 2006). Plaintiffs' counsel supports the Settlement. *See* Exhibit B, ¶ 22; Exhibit C, ¶ 20.

The Settlement includes only the Plaintiffs who have filed written consent forms to join this Lawsuit and who agree to be bound by any settlement or judgment in this case. *See* Exhibit B, ¶ 23; Exhibit C, ¶ 20. As such, there are no absent members.

**5.     The Settlement distributions are fair, reasonable and adequate.**

In reviewing an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999)). In the present case, the Settlement Agreement provides that the Settlement Payment, after deduction of the service award to Named Plaintiff Cowan, attorneys' fees and litigation expenses to Plaintiffs' counsel, and a reserve for the administration of the settlement, be divided into pro rata Individual Settlement Payments to Plaintiffs based on each Plaintiff's number of workweeks during the relevant period.

The benefit that Plaintiffs will receive from their Individual Settlement Payments as compared to the unknown maximum they potentially could have received if they had prevailed at trial is fair and reasonable, especially given the defenses raised by Nationwide and the risks if this litigation were to proceed to trial. *See* Exhibit B, ¶ 22, 24; Exhibit C, ¶¶ 19–20. Here, even if Plaintiffs succeeded on the merits of their claims, the amount of recovery is highly uncertain and something upon which the Parties continue to disagree. In particular, the parties significantly disagree as to the amount of time log-on activities require, whether such time is compensable or de minimis under the FLSA, and whether a three-year or two-year statute of limitations and liquidated damages would apply in this case. *See Crawford*, 2008 WL 4724499 at *7 (approving settlement for over 300 class members where potential recovery difficult to ascertain due to potential defenses, including de minimis argument).

### 6.    The Settlement promotes the public interest.

The final consideration, public interest, also supports approval of the Settlement.  As noted in *Crawford*, "[i]f the settlement reflects a reasonable compromise over issues actually disputed, . . . such as back wages, a court may approve a settlement to 'promote the policy of encouraging settlement of litigation.'"  *Crawford*, 2008 WL 4724499 at *9 (quoting *Lynn's FoodStores, Inc.*, 679 F.2d at 1353).  Such is the case here.

### B.    THE REQUESTED SERVICE AWARD TO NAMED PLAINTIFF COWAN SHOULD BE APPROVED

The Settlement contemplates providing a $2,500.00 service award to Named Plaintiff Cowan.  Service awards to a representative plaintiff recognizing the value of his or her services on behalf of other participants are proper.

As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.

130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).  In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing case and advising counsel in prosecution of case."  *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).  Courts also recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances."  *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710

(E.D. Mich. 1985)). *See also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

In the present case, Named Plaintiff Cowan contributed to the ultimate success of this lawsuit. She was willing to serve as the representative plaintiff and include her name prominently on the style of the case. As the representative Plaintiff, Plaintiff Cowan engaged in lengthy conversations with her counsel describing—in great detail—Nationwide's time-keeping and phone systems. *See* Exhibit B, ¶¶ 12, 14. Plaintiff Cowan also facilitated filing the motion for conditional certification by executing a detailed declaration drafted over the course of multiple conversations that supported conditional certification. *See* Exhibit B, ¶ 14. Finally, Plaintiff Cowan voluntarily entered into a general release as a condition of the settlement as opposed to the limited release applicable to the opt-in Plaintiffs. *See* Exhibit A, at ¶ 11. Accordingly, Plaintiff Cowan helped facilitate the successful resolution of this matter and her time and efforts support the requested service payment. *See* Exhibit B, ¶ 23.

### C. PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES AND LITIGATION COSTS ARE REASONABLE AND SHOULD BE APPROVED

After the Court has confirmed that the terms of settlement are fair to Plaintiffs, it may review the Parties' agreement as to the provision of fees and costs to Plaintiffs' Counsel. The Settlement reflects Defendant's agreement to pay Plaintiffs' Counsel forty percent (40%) of the settlement amount, inclusive of reasonable fees and costs incurred in the litigation.[2] *See* Exhibit A, ¶ 3.

---

[2] Plaintiff recognizes that this Court has previously indicated that it views attorneys' fees of forty percent (40%) of the common fund to be "high." *See Hebert v. Chesapeake Operating, Inc.*, No. 2:17-CV-852, 2019 WL 4574509, at *2 (S.D. Ohio Sept. 20, 2019). Plaintiff's counsel, however, supports the

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir.1994), *cert. denied*, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

The purpose of fee shifting statutes "is to induce a capable attorney to take on litigation that may not otherwise be economically viable." *Gascho, et al. v. Global Fitness Holdings, LLC*, 822 F. 3d 269, 280 (6th. Cir. 2016) *citing Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552, 130 S. Ct. 1662, 176 L.Ed.2d 494 (2010) (explaining that a "reasonable" fee is one that is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case").The standard for reviewing a request for attorney's fees is reasonableness, *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 249 (S.D. Ohio 1991), and there is no specific numeric relationship required between the amount of economic losses recovered and the amount of fees recoverable. *See Fegley v. Higgins*, 19 F.3d 1126, 1134-43 (6th Cir. 1994) (recognizing that an FLSA fee award "encourages the vindication of congressionally identified policies and rights").

---

requested fee amount by confirming its reasonableness through the application of the lodestar cross-check and the significant work performed on this case in comparison to *Herbert*. *See id.* at *7.

There are two basic measures for evaluating the fairness of an attorney's award under the FLSA—"work done and results achieved." *Rui He v. Rom*, 751 Fed. App'x. 664, 673 (6th Cir. 2018) (quoting *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016)). The "work done" measure is the "lodestar" method of attorney fee calculation and the "results achieved" measure is the "percentage of the fund" method of attorney fee calculation. *Id*. at 279. The Sixth Circuit permits a court to choose the one or the other method as the court, in its discretion, deems appropriate for the circumstances of a particular case so long as the court articulates its reasons. *See Moulton v. U.S. Steel Corp.,* 581 F.3d 344, 352 (6th Cir. 2009) (quoting *Rawlings*, 9 F.3d at 516).

"When determining whether a certain fee request is reasonable, the Court considers a myriad of factors that are all within the Court's knowledge." *Hebert*, 2019 WL 4574509, at *4 (citing *Minor v. Twin Rivers Constr. Inc*., No. 2:16-cv-1002, 2017 WL 6372626, at *1–2 (S.D. Ohio Nov. 20, 2017). Those factors include:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Id.* Plaintiff will address each factor in turn.

### i.     The Value of the Benefit Rendered to the Plaintiff Class

Plaintiff and Opt-in Plaintiffs are receiving a substantial recovery on their claims. Indeed, on average they will receive approximately $200.00 in damages, based on their number of weeks worked for Defendant within the relevant time period. *See* Exhibit B, at ¶ 25; Exhibit C, at ¶ 20. Multiple Plaintiffs will receive approximately $400.00 for their damages.

### ii. The Value of the Services on an Hourly Basis

Plaintiff's Counsel expended over 276.8 hours in the prosecution of Plaintiff's and the Opt-in Plaintiff's claims. As discussed in greater detail below, the applicable lodestar amount in this case is $95,382.35, an amount higher than the requested fee award. *See* Exhibit B, at ¶ 10; Exhibit C, at ¶ 5.

### iii. Whether the Services Were Undertaken on a Contingent Fee Basis

Counsel took this case on a contingent basis and took the risk of non-payment for their work if there was no recovery for the Plaintiffs. Courts generally look with favor upon Plaintiff's Counsels' request for an attorney fee award when they undertake the case on a contingency basis and "absorb[] the risk of an unsuccessful outcome and no fee of any kind." *Hebert*, 2019 WL 4574509, at *4 (*citing Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *30). Plaintiff's counsel did undertake this case on a contingent-fee basis. The representation agreement between Plaintiff Cowan and her counsel provides for a 40% fee in the event Plaintiff is successful on her claims. Importantly, the representation agreement further provides that Plaintiff Cowan bore no risk of loss in the event she was unsuccessful. Plaintiff's counsel was solely responsible for all costs and expenses in this matter with no certainty of recovery.

### iv. Society's State in Rewarding Attorneys Who Produce Such Benefits in Order to Maintain Incentive to Others

This factor favors approval because "[s]ociety's stake in rewarding attorneys who bring class action wage and hour cases" recognizes the importance of an employees ability to find counsel to litigate their claims, although they may be individually small. *C.f. id.* at *5.

### v. The Complexity of the Litigation

"FLSA collective and class matters are inherently complex[.]" *Id.* This case is no different. As indicated by the docket sheet, the Parties engaged in substantial (and substantive) briefing preceding the settlement before this Court.[3]

### vi. The Professional Skill and Standing of Counsel on Both Sides

Experienced counsel, specialized in wage and hour litigation, represented the Parties on each side of the docket. The skill and experience of Plaintiff's counsel is further addressed in the Declarations provided by Clif Alexander and Robert DeRose. *See* Exhibit B, at ¶ 3; Exhibit C, at ¶¶ 9–10.

### 1. Plaintiff's Attorneys' Fees Are Reasonable Pursuant to the Percentage of the Fund Method.

Plaintiff's counsel contend that the "percentage of the fund" method is appropriate herein. Courts readily approve the "percentage of the fund" method. *Osman v. Grube, Inc.*, No. 3:16-CV-00802-JJH, 2018 WL 2095172, at *3 (N.D. Ohio May 4, 2018) (citing *Rotuna v. W. Customer Mgmt. Grp.*, LLC, No. 4:09–CV–1608, 2010 WL 2490989, at *7 (N.D. Ohio June 15, 2010) (approving one-third of the common fund as attorneys' fees)). One-third of the common fund is a reasonable attorneys' fee award "and has been approved in similar FLSA collective actions in this judicial district." *Id.* at *3 (citing *Dillworth v. Case Farms Processing, Inc*., 5:08CV1694 (N.D. Ohio 2009); *Jackson v. Papa John's*, Case No. 1:08–CV–2791 (N.D. Ohio 2008); *Fincham v. Nestle Prepared Foods Co*., 1:08–CV–73 (N.D. Ohio 2008*); McGhee v. Allied Waste Indus*., Case No. 1:07–CV–1110 (N.D. Ohio 2007)). Here, Plaintiff's counsel obtained a substantial damage

---

[3] This factor has also been addressed at length, *supra* § A.2.

award based on the facts of the case and Defendant's arguments that Plaintiffs were not entitled to any recovery, at all. *C.f., Osman*, 2018 WL 2095172, at *3.

Plaintiff's Counsel seeks to have its 40% contingency fee granted to cover the work performed to achieve the great result for the Plaintiff and for litigation expenses and these facts warrant approval of the requested fee amount of $50,000.00 for fees and expenses.

### 2. The Lodestar Cross-Check Confirms Reasonableness of Requested Fee

Applying the lodestar cross-check, Plaintiff's counsel have expended 276.8 hours in the prosecution of this matter and, applying their applicable hour rates, have a lodestar amount of $95,383.35. *See* Exhibit B, at ¶ 10; Exhibit C, at ¶ 5. All of the hours expended were reasonable and necessary, and aided in obtaining the settlement before this Court. *See* Exhibit B, at ¶ 10; Exhibit C, at ¶ 5. Moreover, and as explained in more detail in the attached declarations, the hourly rates requested by counsel are reasonable and have been previously approved in wage and hour cases across the United States. *See* Exhibit B, at ¶ 9; Exhibit C, at ¶¶ 4–5.

Because the lodestar cross-check confirms the reasonableness of the requested percentage of the fund amount of forty percent (40%), Plaintiff asks this Court to approve the requested fee amount as fair and reasonable.

### III. <u>CONCLUSION</u>

For the reasons addressed above, the parties respectfully request that this Court approve the Settlement, along with each of its exhibits, by entering the Proposed Order Approving Settlement and Dismissal with Prejudice (attached as Exhibit A(3) to the Settlement Agreement).

Respectfully submitted,

| /s/ *Clif Alexander* | /s/ *Tonya B. Braun* |
|---|---|
| Clif Alexander (*admitted pro hac vice*) | Tonya B. Braun (0075048) |
| Austin W. Anderson (*admitted pro hac*) | Jones Day |
| Lauren E. Braddy (*admitted pro hac vice*) | 325 John H. McConnell Boulevard, Suite 600 |
| ANDERSON ALEXANDER, PLLC | Columbus, Ohio 43215 |
| 819 N. Upper Broadway | Phone: (614) 469-3939 |
| Corpus Christi, Texas 78401 | Facsimile:  (614) 461-4198 |
| Email: clif@a2xlaw.com | tbraun@jonesday.com |
| austin@a2xlaw.com | |
| lauren@a2xlaw.com | |

Robert E. DeRose
Jessica R. Doogan
BARKAN MEIZLISH DEROSE
WENTZ MCINERNEY PEIFER, LLP
4200 Regent Street, Suite 210
Columbus, Ohio 43215
Email: bderose@barkanmeizlish.com
jdoogan@barkanmeizlish.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2020, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

/s/ *Clif Alexander*
Clif Alexander